## AMERICAN AGR. CHEMICAL CO. v. JANKOWSKI.

### No. 7388.

District Court, E. D. New York.

June 8, 1937.

J. Carlisle Swaim, of New York City, for plaintiff.

Charles N. Wysong, of Port Washington, N. Y., for defendant.

GALSTON, District Judge.

This is an action in equity in which it is alleged that on July 28, 1923, Leon Jankowski, with the intent to hinder, delay, and defraud his creditors, conveyed without consideration real property to his wife, the defendant herein, by deed bearing date July 28, 1923.

As I found at the conclusion of the trial that the transfer was fraudulent, it will not be necessary in this opinion to discuss the facts.

Arising out of the defenses, two questions of law were left open: First, whether this court has jurisdiction of the action; and, secondly, whether the statute of limitations pleaded by the defendant is a valid defense.

At the trial the plaintiff seemed to rely on provisions of sections 273, 274, 275, 276, and 278, and the Debtor and Creditor Law of the State of New York (Consol. Laws N.Y. c. 12).

These sections clearly are not applicable because they became effective only April 1, 1925, and were not retroactive. Therefore they do not apply to the conveyance of July 28, 1923.

However, section 263 of the Real Property Law of the State of New York is applicable (Consol.Laws N.Y. c. 50). It reads: "§ 263. Conveyance with intent to defraud creditors void. A conveyance * * * of an estate * * * in .real property, * * * made with the intent

to hinder, delay or defraud creditors * * * is void as against every person so hindered, delayed, or defrauded."

Jankowski, during the years 1922 and 1923, while engaged in the farming and producing business, purchased from the plaintiff's predecessor, the American Agricultural Chemical Company of Connecticut, fertilizer at the agreed price of $2,559.75. Action was brought against him by that company for payment, and a judgment in the amount of $4,031.62 was recovered and entered in the office of the clerk of the county of Nassau on December 14, 1927. The judgment was thereafter, on June 30, 1930, assigned to the plaintiff. Execution for the collection of the judgment was not issued.

■ It is the contention of the defendant that the issuance of execution is a condition precedent to the maintenance of this suit. Such in general is the law, for a plaintiff should exhaust his remedies at law before seeking equitable relief. However, exceptions to the general rule are found. It is stated in 12 Ruling Case Law, p. 638: "The requirements of the issuance of execution and its return nulla bona before invoking the equitable remedy to set aside a fraudulent conveyance will usually be relaxed if it be shown that such procedure would be vain. So the impossibility, impracticability or futility of exhausting the remedy at law has been held to be a sufficient excuse for not doing so."

Indeed, in Case v. New Orleans & Carrollton R. Co. et al., 101 U.S. 688, 690, 25 L.Ed. 1004; there was indication that not even a procurement of a judgment was an absolute condition precedent. It was there said: "So it has been held that a creditor, without having first obtained a judgment at law, may come into a court of equity to set aside fraudulent conveyances of his debtor, made for the purpose of hindering and delaying creditors, and to subject the property to the payment of the debt due him."

See, also, Allan v. Moline Plow Co. (C. C.A.) 14 F.(2d) 912; Reade v. Livingston, 3 Johns.Ch.(N.Y.) 481, 8 Am.Dec. 520.

■ The facts in this case readily bring the plaintiff within the exception to the general rule. It appears that the judgment creditor in the action against Jankowski made diligent and frequent investigations concerning Jankowski's ability to pay, and at no time did the result show that he had any property whatsoever.

Confirmation of such futility is given indeed by the defendant, who admitted that her husband was unable to pay his bills. She also admitted that she had made no search for her husband's will when he died because he had no property. She testified:

"Q. For how long had you known that he had no property and the will would not be necessary to probate? A. He sold it to me in 1924.

"Q. And after that it was not necessary to depend on this will, was it? A. Absolutely not.

"Q. And that is the reason you did not probate the will, is it? A. I did not probate it because there was nothing to probate.

"Q. That is the sole reason why you did not attempt to probate it, is that it? A. I did not have anything to probate. The auction took place (1925) and the property he sold me, and I had nothing to probate."

Additional confirmation of Jankowski's indigent state is found in the testimony he gave in supplementary proceedings on October 14, 1924, in the action of Adikes v. Jankowski. He testified that he had no assets.

The record also discloses that he suffered a stroke of apoplexy in 1923 at or about the time of the fraudulent transfer and after that never was engaged in gainful occupation. In the circumstances, issuance of execution would have been a futile proceeding.

■ There remains for consideration the question of whether the statute of limitations runs against the plaintiff. The fraud in this case was not discovered until September, 1934. After the plaintiff had completed its investigation, the complaint was promptly filed on October 8, 1934. From the time that the judgment against Jankowski was obtained by plaintiff's predecessor in December, 1927, until the discovery of the fraud, no facts were available to the plaintiff from which fraud could have been suspected. Certainly knowledge of the recording of the deed from her husband to herself was not chargeable to the defendant in fact or by presumption of law.

The plaintiff may have a decree adjudging the transfer of the real property fraudulent and the alleged transfer will be set aside.

If this opinion is not in sufficient compliance with the rule requiring findings of fact and conclusions of law, submit findings of fact and conclusions of law in accordance therewith.